IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANTONIO PEARSON           :
                                                   :
     Plaintiff           :
                                                   :    CIVIL NO. 1:CV-13-1988
   vs.           :
                                                   :    (Judge Caldwell)
THOMAS WILLIAMS,           :
UNIT MANAGER           :
                                                   :
     Defendant           :

*M E M O R A N D U M*

I.   *Introduction*

The pro se plaintiff, Antonio Pearson, is a state inmate formerly confined at the state correctional institution in Coal Township, Pennsylvania.[1] On July 17, 2013, Pearson filed this civil-rights lawsuit alleging that his prison unit manager at Coal Township, Thomas Williams, the only defendant named in the complaint, revoked his single-cell housing status (known as a "Z Code") in March 2011 in retaliation for his filing of grievances and complaints. (Doc. 1, Compl.)

Presently before the court is Williams' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 18, Mot. to Dismiss). On August 28, 2014, after receiving several enlargements, Pearson filed an opposition brief and requested leave to file an amended complaint. (Doc. 34). He simultaneously submitted his proposed amended complaint.

---

[1] Pearson is currently housed at SCI-Greene in Waynesburg, Pennsylvania. *See* Doc. 31.

(Doc. 33).  Defendant then filed a brief in opposition to Pearson's leave to amend.  (Doc. 36).

For the reasons discussed below, the court will grant Defendant Williams' motion to dismiss, deny Pearson's request to file his proposed amended complaint, but allow Pearson to file an amended complaint naming only Unit Manager Williams and Counselor Aikey.

II.   *Background*

   A.   *Complaint*

Plaintiff alleges that as of July 17, 2013, when he filed the Complaint, he had been incarcerated for over twenty-four years.  (Doc. 1, ECF p. 4).  He is a 2000 graduate of the Department of Corrections Special Management Unit (SMU).  (*Id.*)  He has been housed in a single cell, pursuant to a "Z code" classification, from 1998 to 2011.  (*Id.*)  His Z code was based on the accusation that he tried to rape and assault a former cellmate.  (*Id.*)  Sometime in 2011 "defendants" revoked his single-cell status and required him to share a cell with another inmate. (*Id.*)  "Defendants say they took the plaintiff's single cell because of [his] good behavior, which is a lie, because 14 months previous to this, they said that plaintiff had Assaulted another inmate in his cell ... [also] after these defendants took the plaintiff's Z-Code, these same defendants took the plaintiff's [security] level up to a level (4) four, from a lower level (3) three".  (*Id.* at ECF p. 5).  Pearson argues that "defendants took his single cell in retaliation for filing grievances against [SCI-Coal Township] staff".  (*Id.*, ECF p. 4).

Pearson does not want a cellmate. (*Id.* at ECF p. 5). He has warned the defendants "because he would not be able to deal with another inmate and might hurt them or they might hurt" him. (*Id.*) Even though "defendants" moved him frequently, and did not "give the plaintiff the cellie he really wanted," defendants were surprised when Pearson did accept a cellmate. (*Id.*)

Unit Manager Thomas Williams is the only defendant named in the caption or body of the Complaint.

B.   *Proposed Amended Complaint*

The proposed amended complaint seeks to add ten new defendants, all of whom are DOC administrators or SCI-Coal Township employees: Secretary Wetzel; Deputy Secretary Klopotoski; Chief Grievance Officer Dorina Varner; Executive Staff Assistant Anthony Luscavage; SCI-Coal Township Superintendent Varano; Deputy Superintendent Ellett; Deputy Superintendent McMillan; Major of the Guard, George Miller; Major of Unit Management, Mike Miller; and Counselor Aickey. (Doc. 33, Proposed Am. Compl.)

Pearson alleges that on March 23, 2011, Defendant Williams told him that his single cell status was being revoked "and the vote sheet was going around." (*Id.*, ECF p. 9). Pearson then wrote to defendants McMillian, Ellett, Varano, M. Miller, Wetzel and Klopotoski about "defendant Williams and Aickey trying to take his Z-Code in retaliation for grievances" he has filed against staff. (*Id.*) He claims these defendants supported Wiliams' and Aickey's retaliatory actions "when they voted to take the Plaintiff's Z-Code." (*Id.*)

Pearson avers that from June 2010 until March 2011, Williams "went on a campaign of retaliation" against him for filing various grievances. He alleges Williams retaliated against him by refusing to give him a unit job, moved him frequently from cell to cell, and then by finally removing his Z-Code status. He claims Aickey and Williams initiated the removal of his Z-Code in hopes that Pearson would refuse to accept a cellmate so they could issue him a misconduct and place him in the Restricted Housing Unit (RHU). (*Id.*) Defendants Varano, Ellett, McMillan, M. Miller, G. Miller, Wetzel and Klopotoski "all voted to remove the plaintiff's Z-Code," knowing it was initiated for retaliatory reasons. Since the removal of his Z-Code, Pearson "constantly worked with the defendants about this cellie situation but it is not working and the plaintiff is getting more and more frustrated." (*Id.*, ECF p. 10). Pearson seeks monetary damages from each defendant.

III.   *Discussion*

Where arguments presented in Defendant Williams' motion to dismiss and his opposition to Pearson's request to amend his complaint intersect they will be addressed jointly.

   A.   *Pearson's Motion to Amend*

In his proposed amended complaint, Pearson asserts that defendant Williams and Counselor Aickey initiated the revocation of his Z-Code status in retaliation for his filing of institutional grievances. He alleges Varano, Ellett, McMillan, M. Miller, G. Miller, Wetzel and Klopotoski "all voted to take the plaintiff's Z-Code." (Doc. 33 at ¶ 21). He notes that his Z-Code status was revoked on March 23, 2011. Defendant Williams asserts that

Pearson's motion to amend should be denied because any amendment of his present Complaint would be time-barred or futile.

The limitations period for a § 1983 action is the limitations period for personal injury suits in the state where the action arose. *Wallace v. Kato*, 549 U.S. 384, 387, 127 S.Ct. 1091, 1094, 166 L.Ed.2d 973 (2007); *see also Estate of Lagano v. Bergen Cnty. Prosecutor's Office*, 769 F.3d 850, 859-60 (3d Cir. 2014). Accordingly, Pennsylvania's two-year statute of limitations for personal injury applies to cases arising under 42 U.S.C. § 1983. *See* 42 PA. CONS. STAT. ANN. § 5524(7). The limitations period begins to run "'when the plaintiff knew or should have known of the injury upon which [his] action is based.'" *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009)(quoted case omitted)(brackets added). The statute of limitations is tolled while an inmate plaintiff exhausts his administrative remedies. *See Pearson v. Sec'y Dep't of Corr.*, 775 F.3d 598, 603 (3d Cir. 2015)("[T]he PLRA is a statutory prohibition that tolls Pennsylvania's statute of limitations while a prisoner exhausts administrative remedies.").

The statute of limitations in the present matter began to run on March 23, 2011, when Pearson's Z-Code status was revoked. Leaving aside the tolling of the statute while he exhausted his administrative remedies, any civil action would have to have been filed by March 25, 2013.[2] Under the prison mailbox rule, Pearson filed his Complaint on July 17, 2013. This is ostensibly beyond the deadline by about four months. However, we

---

[2] The two-year period would normally have expired on March 23, 2013, but that day was a Saturday. Pursuant to Fed. R. Civ. P. 6(a)(C), "if a period would end on a Saturday . . . the period continues to run until the same time on the next day that" does not fall on a weekend or legal holiday. Thus, the limitations period was extended to Monday, March 25, 2011.

cannot say the Complaint is untimely given that some of this time might have been taken up with Plaintiff's pursuit of his administrative remedies.

We cannot say the same, however, about the proposed amended complaint, which Plaintiff sought leave to file on August 28, 2014. This date falls far beyond any reasonably possible limitations period, and Defendant would appear to assert correctly that the proposed amended complaint is time-barred, unless the claims against the new defendants relate back to the date of the filing of the original complaint pursuant to Fed. R. Civ. P. 15(c).

If a complaint is amended to include an additional defendant after the statute of limitations has run, the amended complaint is not time-barred if it "relates back" to a timely filed complaint. *See Singletary v. Pennsylvania Dep't of Corr.*, 266 F.3d 186, 195 (3d Cir. 2001) and Fed. R. Civ. P. 15(c). Fed. R. Civ. P. 15(c) describes the requirement necessary for an amended complaint to relate back to an original complaint:

> (1) When an Amendment Relates Back. An amendment to a pleading relates back to the date of the original pleading when:
>
> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction or occurrence set out — or attempted to be set out — in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> (i) received such notice of the action that it would not be prejudiced in defending on the merits; *and*

>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(emphasis added).  When a plaintiff seeks to add a new party, the plaintiff must demonstrate that all the requirements of Rule 15(c)(1)(C) are satisfied.  Specifically, an amendment seeking to add new defendants relates back to the date of the original complaint only if it can satisfy this three-part conjunctive test:  (1) the claim arises out of the same conduct originally pleaded; (2) the party to be added by amendment, within 120 days of the original filing date, has received notice of the action such that the party will not be prejudiced in defending the case on the merits; and (3) the party to be added by amendment "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party."  *Singletary*, *supra*, 266 F.3d at 189; Fed. R. Civ. P. 15(c)(1)(C).

As set forth above, the first requirement under Rule 15(c)(1)(C) is that the claims against the newly named defendants arise out of the same occurrence set forth in the presumed timely complaint.  In the original complaint, Pearson alleges Williams retaliated against him for filing grievances when he initiated the revocation of his Z-Code status which was ultimately revoked on March 23, 2011.  (Doc. 1, Compl.)  He now seeks to add several supervisory DOC employees to whom he complained of Williams' and his counselor's (Aikey) retaliatory behavior.  The claims against the new defendants arise from the same facts pled in the original complaint, that they failed to intervene and prevent his Z-Code from being taken for retaliatory purposes.  Thus, the first requirement of the three-part test is satisfied.

-7-

The second condition involves notice. Rule 15(c)(1)(C) requires that the new defendants received notice of the original complaint within 120 days of its filing.[3] "[N]otice does not require actual service of process on the party sought to be added; notice may be deemed to have occurred when a party who has some reason to expect his potential involvement as a defendant hears of the confinement of litigation through some informal means." *Singletary*, 266 F.3d at 195. The Third Circuit recognizes two possible methods by which a court may impute constructive or implied notice under Fed. R. Civ. P. 15(c)(3): the shared attorney method and the identity of interest method. *Id.* at 189.

"The "shared attorney" method of imputing ... notice is based on the notion that, when an originally named party and the party who is sought to be added are represented by the same attorney, the attorney is likely to have communicated to the latter party that he may very well be joined in the action." *Id.* at 196. "[T]he fundamental issue ... is whether the attorney's later relationship with the newly named defendant gives rise to the inference that the attorney, within the 120 day period, had some communication or relationship with, and thus gave notice of the action to, the newly named defendant." *Id.* at 196-97. Thus, in order to succeed under the "shared attorney" method of imputing notice, "the plaintiff must show that there was 'some communication or relationship' between the shared attorney and the John Doe defendant prior to the expiration of the 120–day period." *Garvin v. City of Philadelphia,* 354 F.3d 215, 225 (3d Cir. 2003). Here, no attorney has entered their appearance on behalf of the proposed defendants. While it is possible that

---

[3] The 120-day period under Rule 4(m) is calculated from the formal filing date of the complaint. Fed. R. Civ. P. 4(m). In this case, the Complaint was filed on July 17, 2013. Therefore, the 120-day period ended on or about November 14, 2013. The proposed amended complaint was filed in August 2014.

-8-

the new defendants would be represented by Williams' counsel, there is no evidence that Williams' counsel has placed any of the proposed defendants on notice, nor did they have reason to believe prior to the filing of the amended complaint that they would be named as defendants in this action. Plaintiff therefore cannot rely on the "shared attorney method."

Notice will also be imputed if the parties are so closely related in their business operations or other activities that filing suit against one serves to provide notice to the others of the pending litigation. *Garvin*, 354 F.3d at 227. The Court of Appeals held in *Singletary,* and affirmed in *Garvin,* that "absent other circumstances that permit the inference that notice was actually received, a non-management employee . . . does not share a sufficient nexus of interests with his or her employer so that notice given to the employer can be imputed to the employee for Rule 15(c)(3) purposes." *Id.* (quoting *Singletary*, 266 F.3d at 200). Working for the DOC, or in the same institution, or even office, is insufficient to establish constructive notice between an existing defendant and prospective defendants. *Brown v. McElwee*, Civ. No. 12-3547, 2013 WL 5948026, *6 (E.D. Pa. Nov. 7, 2013)(police officers sharing an office the night of the incident is insufficient to find "identity in interest" for purposes of imputing constructive notice). Here, Unit Manager Williams, a treatment staff employee, does not hold a sufficiently close relationship with the proposed DOC administrative and managerial level central office defendants, or SCI-Coal Township management level staff, for the purpose of imputing notice of the action through a shared identity of interest with these individuals. However, it is possible to impute knowledge of the action to Counsel Aikey who is alleged to have worked with Unit Manager Williams to revoke Pearson's Z-Code. Thus, constructive notice of Pearson's suit may be imputed to Counselor Aikey under the "identity of interest" method.

Finally, Defendant Williams argues that even if Pearson overcomes the first and second requirements of Fed. R. Civ. P. 15(c), "he has not alleged any facts indicating that the additional Defendants knew or should have known that the action would have been brought against them, but for a mistake of identity." (Doc. 36, ECF p. 5). Defendant Williams contends that Pearson's attempt to add the new defendants does not constitute a case of mistaken identity because he knew of their existence, and involvement in the revocation of his Z-Code, at the time he filed his original complaint. (*Id.*) Therefore they conclude he should not now be permitted to amend his complaint to include these defendants. This argument is foreclosed by the United States Supreme Court's decision in *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 541, 130 S.Ct. 2485, 1 77 L.Ed.2d 48 (2010). In *Krupski*, the Supreme Court held "that relations back under Rule 15(c)(1)(C) depends on what the party to be added knew or should have known, not on the amending party's knowledge or timeliness in seeking to amend the pleading." Because Defendant Williams does not address the holding in *Krupski*, we cannot deny the leave to amend on the basis that it is filed against new parties known to Pearson at the time that he filed his original complaint.

Alternatively, Defendant Williams argues that Pearson's request to file an amended complaint should be denied because it would be futile as he fails to state a viable claim against the newly named defendants. (Doc. 36, ECF p. 5). We will address each of Defendant Williams' arguments in turn.

B.   *Lack of Personal Involvement of Williams and Many of the Proposed Defendants in Pearson's Retaliation Claim.*

Defendant Williams argues that Pearson fails to allege the personal involvement of Secretary Wetzel, Deputy Secretary Klopotoski, Chief Grievance Officer Dorina Varner, Executive Staff Assistant Anthony Luscavage, Superintendent Varano, Deputy Superintendent Ellett, Deputy Superintendent McMillan, Major George Miller or Major Mike Miller in the proposed amended complaint.

Under § 1983, an individual may sue state actors to enforce federal statutory and constitutional rights. *See* 42 U.S.C. § 1983. To succeed on a § 1983 claim, an individual must prove that: (1) the conduct in question was committed by an individual acting under the color of state law, and, (2) the conduct deprived the claimant of a constitutional right. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 46 L.Ed.2d 561 (1976); *Harvey v. Plains Tp. Police Dept.*, 421 F.3d 185, 189 (3d Cir. 2005). Section 1983 will not support a claim based on *respondeat superior* or vicarious liability. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)(citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). Personal involvement is an essential element of a civil rights action. *Sutton v. Rasheed*, 323 F.3d 236, 249-250 (3d Cir. 2003). Individual liability can only be imposed if the state actor played an "affirmative part" in the complained-of misconduct. *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence" in the challenged practice. *Argueta v. U.S. ICE*, 643 F.3d 60, 72 (3d Cir. 2011)(quoting *Rode*, 845 F.2d at 1207). "In a § 1983 suit ... masters do not answer for the torts of their servants." *Ashcroft v. Iqbal*, 556 U.S. 662, 676-77, 129 S.Ct. 1937, 1948-49, 173 L.Ed.2d

868 (2009). The mere assertion "that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did" is insufficient to establish liability. *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989).

Likewise, participation in the after-the-fact review of a grievance or other administrative remedy is not enough to establish personal involvement. *See, e.g. Rode*, 845 F.2d at 1208 (finding the filing of a grievance is not enough to show the actual knowledge necessary for personal involvement); *Mincy v. Chmielsewski*, 508 F. App'x 99, 104 (3d Cir. 2013)(finding "an officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement" requirement); *Pressley v. Beard*, 266 F.App'x 216, 218 (3d Cir. 2008)("The District Court properly dismissed these [supervisory] defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them."); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006)(nonprecedenital)(allegations that prison officials and administrators responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying deprivation); *Burnside v. Moser,* 138 F. App'x 414, 416 (3d Cir. 2005)(nonprecedential)(failure of prison official to process administrative grievance did not or amount to a constitutional violation or personal involvement in the alleged constitutional deprivation grieved).

Pearson fails to allege the personal involvement of the following defendants in the alleged retaliatory removal of his Z-Code status: Secretary Wetzel; Deputy Secretary Klopotoski; Chief Grievance Officer Dorina Varner; Executive Staff Assistant Anthony Luscavage; SCI-Coal Township Superintendent Varano; Deputy Superintendent Ellett;

Deputy Superintendent McMillan; Major of the Guard, George Miller; and Major of Unit Management, Mike Miller.  First, it is noted that aside from naming Anthony Luscavage as a potential defendant, Pearson does not allege his involvement in any alleged wrongdoing in the Statement of Facts portion of his proposed amended complaint.  *See* Doc. 33, ECF pp. 6-11.  Next, Pearson cannot impose liability on Secretary Wetzel of Deputy Secretary Klopotoski, Superintendent Varano, Deputy Superintendent Ellett, Deputy Superintendent McMillian, Major of the Guard George Miller or Major of Unit Management Mike Miller on the basis of their supervisory roles.  *Evancho*, 423 F.3d at 353.  Likewise, because Pearson does not have a constitutional right to have his written or verbal requests answered or investigated, his claims against these same defendants for their alleged failure to take remedial action once alerted to Pearons' claim that Williams had instituted there revocation of his Z-Code status for retaliatory reasons also fails to alleged their personal involvement in any violation of his constitutional rights.  The same is true for his claim against Chief Grievance Officer Varner.  *See Rode*, 845 F.2d at 1208.  Therefore, as Pearson fails to allege the personal involvement of these potential defendants in the underlying claim of retaliation, allowing Pearson's proposed amended complaint to go forward against them would be futile.  Pearson may not file an amended complaint as to Secretary Wetzel; Deputy Secretary Klopotoski; Chief Grievance Officer Dorina Varner; Executive Staff Assistant Anthony Luscavage; SCI-Coal Township Superintendent Varano; Deputy Superintendent Ellett; Deputy Superintendent McMillan; Major of the Guard, George Miller; and Major of Unit Management, Mike Miller.

   Next, the court addresses Defendant Williams' motion to dismiss the Complaint against him based on Pearson's alleged failure to allege his personal

involvement.  (Doc. 19, ECF p. 6).  While it does appear that Defendant Williams' name only appears in the caption of the Complaint, and therefore he is entitled to relief, it is also clear that based on Pearson's opposition brief and proposed amended complaint, it is clear that Pearson could amend his Complaint to correct this deficiency.  Thus, he will be permitted to do so.

> C.  *Pearson's Retaliation Claim against Williams and Aickey for Initiating the Removal of his Z-Code Status.*

Pearson alleges that although defendants Williams and Aickey advised him "they took [his] single cell because of [his] good behavior," he knows that to be "a lie" and their true reason behind their action was much more nefarious. (Doc. 33, ECF p. 7). The real reason for revoking his single-cell status was to punish him for filing grievances against Williams and other prison employees on C-Unit "making [Williams] look bad." (*Id.*, ECF p. 9).

Retaliation for expressive activities, such as filing institutional grievances, can infringe upon an individual's rights under the First Amendment.  *See Allah v. Seiverling*, 229 F.3d 220, 224-25 (3d Cir. 2000); *Milhouse v. Carlson*, 652 F.2d 371, 373-74 (3d Cir. 1981). To prevail on a retaliation claim, a plaintiff must show that  "(1) he engaged in constitutionally protected conduct, (2) he was subjected to adverse actions by a state actor, and (3) the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action." *Brightwell v. Lehman*, 637 F.3d 187, 194 (3d Cir. 2011).  An adverse action is conduct that is "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights."  *Id.* (internal quotation marks and quoted case omitted).  The requisite causal connection can be demonstrated by: "(1) an unusually

suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).  In the absence of that proof, the plaintiff is required to show that from the " 'evidence gleaned from the record as a whole' the trier of fact should infer causation." *Id.* (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir.2000)).  The Third Circuit has emphasized that courts must be diligent in enforcing these causation requirements. *Id.*  A defendant may defeat the claim of retaliation by showing that he would have taken the same action even if the plaintiff had not engaged in the protected activity. *Carter v. Dragovich*, 292 F.3d 152, 159 (3d Cir. 2002).

      In his proposed amended complaint, Pearson alleges that from June 2010 until March 23, 2011, Williams was "on a campaign of retaliation against" him.  (Doc. 33, ECF p. 9).  He cites a series of grievances he alleges were the reasons for Williams' and Aickey's retaliatory action of withdrawing his Z-Code status.  Based on the allegations of the Complaint, and the proposed amended complaint, Pearson fails to demonstrate a causal link between his filing of grievances and the revocation of his single cell status.  For temporal proximity alone to establish causation the "timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive because a causal link will be inferred." *Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir. 2003)(quoting *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997)).  "[T]emporal proximity must be measured in days, rather than in weeks or months, to suggest causation without corroborative evidence." *Conklin v. Warrington Tp.,* Civ. O. 06-2245, 2009 WL 1227950, *3 (M.D. Pa. Apr. 30, 2009).  Because the dates of Pearson's grievances is unknown, there is no way for

the court to determine whether the alleged retaliatory action, the initiation of the removal of his Z-Code status, was prompted by their filing.  For this reason, Pearson will be allowed to file an amended complaint to correct this deficiency.

He may file his amended complaint only with respect to his allegations that Williams and Aikey retaliated against him by initiating the revocation of his Z-Code status to punish him for filing grievances.  Pearson will not be permitted to amend his complaint to include other defendants or claims.  The court notes that our granting of permission to file an amended complaint does not resolve the issue of the timeliness of the filing of his original complaint, as that is an issue that cannot be resolved on the face of the complaint.

    D.    *Eleventh Amendment Immunity*

Defendant Williams argues that any claim for monetary damages against him in his official capacity is precluded by the Eleventh Amendment of the United States Constitution.  (Doc. 19, Mot. to Dismiss Br., ECF pp. 5 - 6).  The court agrees.

The Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages.  *See Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144, 113 S.Ct. 684, 687-88, 121 L.Ed.2d 605 (1993)*; Lombardo v. Pennsylvania*, 540 F.3d 190, 194 (3d Cir. 2008).  Suits against state officials in their official capacities are really suits against the employing government agency, and as such, are also barred by the Eleventh Amendment.  *See Hafer v. Melo*, 502 U.S. 21, 25-27, 112 S.Ct. 358, 361-62, 116 L.Ed.2d 301 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989).  Furthermore, as the Pennsylvania Department of Corrections is an executive department of the Commonwealth

of Pennsylvania, *see* 71 PA. STAT. ANN. § 61, it shares in the Commonwealth's Eleventh Amendment immunity. *Lavia v. Pennsylvania, Dept. Of Corr.,* 224 F.3d 190, 195 (3d Cir. 2000). The Commonwealth of Pennsylvania has not waived its rights under the Eleventh Amendment to be sued in federal court. *See* 42 Pa. Cons. Stat. Ann. § 8521(b); *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981).

The Eleventh Amendment, however, does not bar claims for prospective injunctive relief brought against state officials in their official capacities. *See Iles v de Jongh*, 638 F.3d 169, 177 (3d Cir. 2011). It also does not bar a suit for monetary damages against state officials in their *individual* capacities. *See Hafer*, 502 U.S. at 31, 112 S.Ct. at 364-65.

Here, to the extent Pearson sues Unit Manager Williams in his official capacity, his claims for monetary damages will be dismissed.

E.   *Pearson may file an Amended Complaint*

"[I]f a complaint is vulnerable to [Rule] 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 236. In this instance, any amendment against Secretary Wetzel; Deputy Secretary Klopotoski; Chief Grievance Officer Dorina Varner; Executive Staff Assistant Anthony Luscavage; SCI-Coal Township Superintendent Varano; Deputy Superintendent Ellett; Deputy Superintendent McMillan; Major of the Guard, George Miller; and Major of Unit Management, Mike Miller would be futile. However, with respect to Pearson's failure to allege the personal involvement of Unit Manager Williams, it appears Pearson may be able to cure this deficiency. As for his claims that Counselor Aickey, if

Pearson's initial complaint was timely filed, it appears that he would be able to amend his complaint to include a claim against Counselor Aikey.  Again, we caution that due to lack of information as to Pearson's exhaustion efforts we could not definitely establish the timeliness of his original complaint which is alleged to be time-barred.

Thus, Pearson will be granted twenty-one days to file an amended complaint. If Pearson decides to file an amended complaint, he is advised that it must contain the same docket number as the instant action and should be labeled "Amended Complaint."  In addition, the "amended complaint must be complete in all respects.  It must be a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed."  *Young v. Keohane*, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992). Pearson is advised that any amended complaint he may file supersedes the original complaint and must be "retyped or reprinted so that it will be complete in itself including exhibits."  M.D. Pa. LR 15.1.  Consequently, all causes of action alleged in the amended complaint which are not alleged in the original complaint are waived.

Pearson is also advised that his amended complaint must be concise and direct.  *See* Fed. R. Civ. P. 8(d).  Each allegation must be set forth in an individually numbered paragraphs in short, concise and simple statements.  *Id.*  The allegations should be specific as to time and place, and should identify the specific person or persons responsible for the deprivation of his constitutional rights and what each individual did that led to deprivation of his rights.  *Iqbal,* 556 U.S. at 676, 129 S.Ct. at 1948.  He also shall specify the relief he seeks with regard to each claim.  Pearson's failure to file an appropriate amended complaint within the required time will result in his claim being

dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) due to his failure to state a claim on which relief may be granted.

        An appropriate order follows.

        /s/ William W. Caldwell
        William W. Caldwell
        United States District Judge

March 11, 2015